UNITED STATES FIDELITY AND GUARANTY COMPANY, a Foreign Insurance Company, Plaintiff,

v.

THOMAS SOLVENT COMPANY, Thermo–Chem, Inc., a Michigan Corporation, Continental Casualty Company, Canadian Universal Insurance Company, Inc., a Foreign Insurance Company, Northbrook Excess and Surplus Insurance Company, a Foreign Insurance Company, St. Paul Fire & Marine Insurance Company, a Foreign Insurance Company, Auto–Owners Insurance Company, a Foreign Insurance Company, Great American Surplus Lines Insurance Company, a Foreign Insurance

Company, Admiral Insurance Company, a Foreign Insurance Company, First State Insurance Company, a Foreign Insurance Company, Guarantee National Insurance Company, a Foreign Insurance Company, Gibralter Casualty Company, a Foreign Insurance Company, Integrity Insurance Company, a Foreign Insurance Company, Hartford Accident and Indemnity Company, a Foreign Insurance Company, Northstar Re–Insurance Company, a Foreign Insurance Company, Idea Mutual Insurance Company, a Foreign Insurance Company, Richard E. Thomas, a Michigan Resident, Thomas Development, Inc., Thomas Solvent Company of Muskegon, Inc., TSC Transportation, Inc., Thomas Solvent, Inc. of Indiana, an Indiana Corporation, Cora Bell Adkins, a Michigan Resident, Alliance For a Livable Environment, a Michigan Non–Profit Corporation, St. Paul Fire & Marine Insurance Company, a Foreign Insurance Company, Thomas Solvent Company of Detroit, Inc., Defendants,

Letha Thomas and Thomas Solvent Company, Counter-Claimants,

and

Letha Thomas, Cross–Claimant.

GRAND TRUNK WESTERN
RAILROAD COMPANY,
Cross–Claimants,

v.

CONTINENTAL CASUALTY COMPANY; Canadian Universal Insurance Company, Inc., Northbrook Excess and Surplus Insurance Company, St. Paul Fire & Marine Insurance Company, Auto–Owners Insurance Company, Great American Surplus Lines Insurance Company, First State Insurance Company, Guarantee National Insurance

Company, Gibralter Casualty Company, Integrity Insurance Company, Hartford Accident and Indemnity Company, Northstar Re–Insurance Company, Idea Mutual Insurance Company, Cross–Defendants.

GRAND TRUNK WESTERN
RAILROAD COMPANY,
Counter–Claimant,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, a Foreign Insurance Company, Counter–Defendant,

Catherine Allen, Individually, and as Next Friend of Eric Allen, Troy Allen and Richard Allen, Minors, Intervenor–Plaintiff,

Richard E. Thomas, Thomas Development, Inc., TSC Transportation, Inc., and Letha Thomas, Thomas Solvent Company of Muskegon, Inc., Thomas Solvent, Inc. of Indiana, Thomas Solvent Company of Detroit, Inc., Intervenor–Defendant.

THERMO–CHEM, INC., Richard E. Thomas, Thomas Development, Inc., Thomas Solvent Company of Muskegon, Inc., TSC Transportation, Inc., Thomas Solvent, Inc. of Indiana, Thomas Solvent Company of Detroit, Inc., Counter–Claimants,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Counter–Defendant,

Thomas Solvent Company, Thermo–Chem, Inc., Richard E. Thomas, Thomas Development, Inc., Thomas Solvent Company of Muskegon, Inc., TSC Transportation, Inc., Thomas Solvent, Inc. of Indiana, Thomas Solvent Company of Detroit, Inc., Cross–Defendants,

Great American Surplus Lines
Insurance Company,
Cross–Claimant.

ST. PAUL FIRE & MARINE
INSURANCE COMPANY,
Counter–Claimant,

v.

THERMO–CHEM, INC., Richard E.
Thomas, Thomas Development, Inc.,
Thomas Solvent of Muskegon, Inc.,
TSC Transportation, Inc., Thomas Sol-
vent, Inc. of Indiana, Thomas Solvent
Company of Detroit, Inc., Letha Thom-
as, and Thomas Solvent Company,
Counter–Defendants.

No. 4:85–CV–415.

United States District Court,
W.D. Michigan.

Oct. 30, 1990.

Michael B. Ortega, Charles E. Ritter, Mil-
ler, Canfield, Paddock & Stone, Kalamazoo,
Mich., for plaintiff.

James M. Sullivan, Robert P. Hamilton,
Sullivan, Hamilton & Schulz, Battle Creek,
Mich., Jay E. Brant, Mark A. Goldsmith,
Honigman, Miller, Schwartz & Cohn, De-
troit, Mich., Drew F. Seaman, Straub, Sea-
man & Allan, P.C., St. Joseph, Mich., Ter-
rence J. Lilly, Lilly, Domeny & Byrne,
Kalamazoo, Mich., William M. Savino, Law-
rence Levy, Rivkin, Radler, Dunne & Bayh,
Uniondale, N.Y., Peter R. Tolley, Todd R.
Dickinson, Tolley, Fisher & Verwys, P.C.,
Grand Rapids, Mich., Laurie Schellinger,
Dowd & Dowd, Chicago, Ill., Stephen M.
Kelley, Kitch, Saubier, Drutchas, Wagner
& Kenney, P.C., Detroit, Mich., John W.
Allen, Howard & Howard, Kalamazoo,
Mich., Douglas A. Donnell, Linda L. Blais,
Mika, Meyers, Beckett & Jones, James R.
Nelson, Nelson & Kreuger, P.C., Grand
Rapids, Mich., J. Richardson Johnson, Ear-
ly, Lennon, Fox, Thompson, Peters &
Crocker, Kalamazoo, Mich., John M. Kruis,
Smith, Haughey, Rice & Roegge, P.C.,
Reynolds A. Brander, Jr., William D. Bu-
chanan, Jo M. Bonnell, Michael R. Gregg,
Elizabeth J. Caprini, Carla D. Davis, Su-
zanne M. Crowley, Steven R. Apel, Cho-

lette, Perkins & Buchanan, Grand Rapids, Mich., Michael Gerard Bruton, Karen L. Douglas, Mary Ann Phillips, Marlene A. Kurilla, Robert Marc Chemers, Pretzel & Stouffer, Chicago, Ill., F. William McKee, Rhoades, McKee, Boer, Goodrich & Titta, Grand Rapids, Mich., William J. Ewald, Marie E. Kessler, Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C., Grand Rapids, Mich., James B. Brown, James B. Brown & Assoc., Lansing, Mich., Richard Lippes, Allen, Lippes & Shonn, Buffalo, N.Y., for defendants.

Frederick J. Dindoffer, R. Craig Hupp, Bodman, Longley & Dahling, Detroit, Mich., for cross-claimant.

Ralph J. Sirlin, May, Gowing, Simpson & Strote, Bloomfield Hills, Mich., Terry E. Heiss, Ball, VanDam & Ross, Grand Rapids, Mich., for intervenor-plaintiff.

## OPINION

ENSLEN, District Judge.

This case comes before the Court on defendants' motions for reconsideration or objections to Magistrate Rowland's June 1, 1990 Opinion and Order regarding realignment of the parties and subject matter jurisdiction. On June 15, 1990, Auto–Owners Insurance Company (Auto–Owners) filed Objections in Memorandum Brief Regarding Magistrate's Opinion and Order, Dated June 1, 1990. Grand Trunk Western Railroad Company (Grand Trunk) entered a Motion for Reconsideration of the Opinion and Order Dated June 1, 1990 or, in the Alternative, Objections to the Magistrate's Report and Recommendation Dated June 1, 1990.[1]

Plaintiff, United States Fidelity and Guaranty Co. (USF & G), filed a Motion for Realignment on October 5, 1989 "to more accurately reflect [the parties'] respective legal positions on the remaining issues, and to expedite the disposition of the action."[2] On February 21, 1990, defendant Auto–Owners also filed a Motion for Realignment of the Parties and Dismissal for Want of Diversity Jurisdiction. Defendant, St. Paul and Marine Insurance Co. (St. Paul), then filed a Motion to Join Necessary Thomas Parties as Defendants Pending Realignment pursuant to Rule 19, Fed.R. Civ.P. 19. Magistrate Rowland denied the motions for realignment and granted defendant St. Paul's motion to join. Grand Trunk and Auto–Owners object to the Magistrate's denial of the motion requesting realignment of the parties and dismissal for lack of subject matter jurisdiction.

USF & G alleges in its complaint that this Court has subject matter jurisdiction based on diversity pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $10,000 and the controversy is between parties of different states.[3] Basically, Auto–Owners views the primary dispute in this action as one involving the insureds' insurance policy coverage and liability of the insurance companies to the insureds (Thomas Parties) and the intervenors (Grand Trunk and the "Allen Group"). Consequently, Auto–Owners contends, the parties should be realigned to conform with this primary dispute: Thomas Parties, Allen Group and Grand Trunk on one side opposing the insurance companies on the other side. Because Auto–Owners and most of the Thomas parties are Michigan citizens, such a realignment would destroy diversity of citizenship. Auto–Owners and Grand Trunk conclude that as a result, the entire case should be dismissed for lack of subject matter jurisdiction.[4]

---

**1.** Grand Trunk's motion is dated June 14, 1990. Due to a clerical error, the motion was not docketed until September 26, 1990. According to USF & G's responsive brief, it received a copy of Grand Trunk's motion before June 20, 1990.

**2.** USF & G corrected and clarified its request to realign the parties on December 15, 1989.

**3.** At the time of filing the complaint, September 1985, section 1332 only required an allegation that the amount in controversy exceed $10,000. 28 U.S.C. § 1332 (1988). USF&G did not allege that defendants are citizens of specific states, but merely alleged that they are corporations, "not incorporated in or having their principal places of business in Maryland," the plaintiff's state of citizenship. Complaint, at 2–3.

**4.** Defendants Thomas Parties also conclude, in their September 24, 1990 Memorandum Re-Alignment and Jurisdiction, that the Court lacks subject matter jurisdiction and should dismiss the case in its entirety.

## Background

Plaintiff, USF & G, filed its complaint on September 18, 1985, seeking a declaration of its rights and liabilities regarding environmental litigation against its insured, Thomas Solvent Co. and other Thomas Companies. Under a reservation of rights, USF & G had appeared to defend Thomas Solvent Company in three state court actions.[5] USF & G initially named Thomas Solvent Co. and Thermo–Chem, Inc. as defendants along with a number of insurance companies that had issued policies to certain of the Thomas parties. Other parties have since joined or intervened in the action including additional insurers, the remaining Thomas parties, and other potentially responsible parties involved in litigation against the Thomas parties in separate actions.

The initial complaint presented two primary issues: the duty to defend and duty to indemnify. USF & G sought a declaration that all of the defendant insurance companies have a duty to defend the Thomas parties and that it has no duty to indemnify the Thomas parties for any judgments imposed. In the alternative, USF & G sought a declaration that it has no duty to defend or indemnify the Thomas parties.[6] On August 18, 1986, in response to the parties' briefs on the subject, the magistrate issued an order without a written opinion that "[a]t this time the Court is satisfied that jurisdiction of this matter should be retained in this court." However, the briefs were on the subject of the Court's discretionary jurisdiction over declaratory judgment actions, not the Court's subject matter jurisdiction.[7]

On January 9, 1988, the Court held that USF & G and four other primary insurance companies (Canadian Universal, Northbrook, St. Paul, and Hartford) share the duty to defend the various Thomas Solvent entities that are defendants in the underlying environmental litigation. The remaining issues in dispute all relate to the duty to indemnify. Subject matter jurisdiction is based solely on diversity jurisdiction.

## Standard of Review

The first issue is what standard of review the Court should apply to the Magistrate's Opinion and Order. Title 28, section 636 delineates the powers of United States Magistrates. 28 U.S.C. § 636 (1988). Section 636(b)(1)(A) provides that in the absence of contrary law, a "judge may designate a magistrate to hear and determine any pretrial matter pending before the court" except for certain specific motions that are all potentially dispositive of the claim.[8] The standard of review for motions under section (A) is "clearly erroneous or contrary to law."[9] Section 636(b)(1)(B) authorizes the magistrate to hear the dispositive motions specifically excepted from section (A). A judge must make a *de novo* review of the Magistrate's rulings on these dispositive motions.

---

5. The state court actions were: *Allen, et al. v. Thomas Solvent, et al.,* Calhoun Co. Circuit Court, No. CA 84–3331–NO (filed Nov. 26, 1984); *Atkins, et al. v. Canadian National Railways, et al.,* Calhoun Co. Circuit Court, No. 84–3081–CE (filed Oct. 22, 1984); and *Kelly v. Thomas Solvent, et al.,* Calhoun Co. Circuit Court, No. 84–72–CE (filed Jan. 12, 1984). These cases have since been dismissed or closed.

6. On July 10, 1987, USF & G filed an amended complaint seeking a declaration of 1) which, if any, of the insurance companies has a duty to defend the insureds in the lawsuits mentioned; 2) which, if any, of the insurance companies must pay a prorata share of the past and future defense costs in the mentioned lawsuits and the amount of each company's share; 3) which, if any, have a duty to indemnify the insureds in the lawsuits; and 4) which, if any, must pay a prorata share of any indemnification of their insureds and a ruling on the amount of each prorata share.

7. *See infra* note 15.

8. The provision excepts motions for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by a defendant, to suppress evidence in a criminal case, to dismiss or permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. 28 U.S.C. § 636(b)(1)(A).

9. The statute provides: "A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

The Federal Rules of Civil Procedure separate the two standards of review according to those motions that are nondispositive and those that are dispositive. Fed. R.Civ.P. 72. The magistrate may hear a dispositive motion only with the consent of the parties and may enter into the record a recommendation for disposition of the matter. The party requesting review must promptly provide the Court a transcript of the hearings, and the Court must conduct a *de novo* review. *Id.* 72(b).

■ The motion at issue in this case—motion for realignment of the parties—is not specifically excepted from section 636(b)(1)(A). If the motion were granted, however, the court would no longer have subject matter jurisdiction because diversity of citizenship would be lost. Because this Court's jurisdiction over the case is a critical element underlying the motion, it is arguable that I should treat it as a dispositive motion and conduct a *de novo* review. *See Roland v. Johnson,* 856 F.2d 764, 768–69 (6th Cir.1988) (notwithstanding appointment of magistrate as special master, trial court was correct in conducting *de novo* review of magistrate's ruling on summary judgment). Just as a judgment on the pleadings, which is explicitly excepted from the magistrate's 636(b)(1)(A) powers, is dispositive, so is a determination of subject matter jurisdiction made later in the proceedings. In both instances, the case is involuntarily dismissed without prejudice and the parties are free to file a new claim in state court. In that scenario, however, the federal claim is disposed of. I find that the motion for realignment and dismissal of the action is a dispositive motion. Accordingly, I will treat that portion of the Magistrate's Opinion and Order which deals with the motion for realignment and dismissal of the action as a report and recommendation pursuant to section 636(b)(1)(B) and Rule 72(b). I will make a *de novo* determination of those portions of the report to which the parties object. Because there are no issues of fact, a hearing is not required.

### Diversity Jurisdiction

Fundamental to federal court jurisdiction is the principle that federal courts are courts with jurisdiction limited to the Constitutional restrictions embodied in Article III and the related statutory guidelines. *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). Courts have continued to follow the rule of *Strawbridge v. Curtiss,* 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806), that in order for a federal court to exercise subject matter jurisdiction, there must be complete diversity of citizenship between the opposing parties. *E.g., Smith v. Sperling,* 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); *Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 16–17, 86 L.Ed. 47 (1941); *see also* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 3605, at 397–400 (2d ed. 1984). In addition, there must be an actual and substantial controversy existing between the diverse citizens. *Indianapolis,* 314 U.S. at 69, 62 S.Ct. at 16–17.

The Sixth Circuit has adopted the general rule that "federal jurisdiction is tested according to the facts as they exist at the time an action is initiated and that diversity jurisdiction, once acquired, is not defeated by events occurring subsequent to the commencement of the action." *Television Reception Corp. v. Dunbar,* 426 F.2d 174, 177 (6th Cir.1970) (citations omitted). In *Television Reception,* the court concluded that the mandatory joinder of parties to the action did not warrant an exception to the general rule because the joinder was accomplished to facilitate the district court's conduct of the litigation and did not affect the rights of the original parties to the lawsuit. *Id.* at 178.

■ Similarly, in this case, the joinder of the remaining Thomas defendants as necessary parties does not affect the rights of the original parties to the suit. It was accomplished because of their interest in the insurance contracts at issue and their standing as defendants in the underlying environmental actions. Thus, the question for this Court to determine is whether di-

versity jurisdiction was proper at the time the action was initiated.

### Realignment of the Parties

■ These motions raise two issues: 1) identifying the standard for proper alignment of the parties in a declaratory judgment action brought by one insurer against other insurers when the insured parties are defendants and subject matter jurisdiction is based solely on diversity of citizenship; and 2) whether the parties are properly aligned under that standard.

The Supreme Court's decision in *Indianapolis* provides the guiding principles regarding party realignment when subject matter jurisdiction is based on diversity of citizenship.[10] *See also* C. Wright, A. Miller & E. Cooper, *supra*, § 3607 (1984 & Supp. 1990) (parties with same "ultimate interests in the outcome" must be aligned on same side). A majority [11] of the *Indianapolis* Court held that the plaintiff's alignment of the parties is not binding on the Court in determining whether diversity exists. *See also Reed v. Robilio*, 376 F.2d 392, 394 (6th Cir.1967) (federal court not bound by pleader's arrangement of parties in determining whether jurisdiction exists). In fact, the Court has an affirmative duty to determine whether the "necessary collision of interests" exists between the opposing parties. 314 U.S. at 69, 62 S.Ct. at 16–17; *Grant Co. Deposit Bank v. McCampbell*, 194 F.2d 469, 471 (6th Cir.1952). The Court should evaluate party alignment on a case-by-case basis, not according to inflexible rules. *Indianapolis*, 314 U.S. at 69, 62 S.Ct. at 16–17. "Whether the necessary 'collision of interests' exists ... must be ascertained from the 'principal purpose of the suit' and the 'primary and controlling matter in dispute.'" *Id.* at 69–70, 62 S.Ct. at 17 (citations omitted).

Since *Indianapolis*, the Court held that in ruling on realignment, the courts are "to determine the issue of antagonism on the face of the pleading and by the nature of

the controversy." *Smith v. Sperling*, 354 U.S. 91, 96, 77 S.Ct. 1112, 1115, 1 L.Ed.2d 1205 (1957). Additionally, the *Indianapolis* Court warned that in reviewing diversity jurisdiction, lower courts should be particularly aware of strategic party alignments arranged primarily to satisfy federal jurisdiction requirements. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Indianapolis*, 314 U.S. at 77, 62 S.Ct. at 20–21.

Although *Indianapolis* is not an action involving insurance policy coverage and liability, its facts are instructive. In *Indianapolis*, the Supreme Court concluded that the parties should have been realigned, and it reversed the lower courts' findings of jurisdiction even though the action had been fully litigated and a judgment had been entered. *Id.* at 77, 62 S.Ct. at 20–21. Chase, a trustee under a mortgage deed to secure a bond issue, instituted a declaratory judgment action against three parties who were all potentially liable for interest and dividend payments on the bond. The party to whom the bond had been issued had leased the property, which stood to benefit from the bond, also transferring the underlying bond obligations. After a number of years, during which time the lessee made the payments on the bond, the lessee transferred all its property, including that covered by the lease, to a third party. After the conveyance, both the lessee and the transferee denied obligation to make the payments on the bond. The Court held that the parties should be realigned according to the primary matter in dispute: the lease agreement. The original issuance of the bond was not in dispute. Accordingly, the Court realigned the parties, with those wanting to enforce the lease on one side and those wanting to defeat the lease on the other side. Realignment destroyed diversity jurisdiction.

---

**10.** In *Indianapolis,* the Supreme Court held that the parties should be realigned despite the fact that the case had been fully litigated and decided.

**11.** It was a 5–to–4 decision.

*Id.* at 75, 62 S.Ct. at 19–20. Supporting its realignment was the Court's finding that Congress intended the diversity statutes to be restrictively applied in order to preserve state sovereignty and independence. *Id.* at 76–77, 62 S.Ct. at 20–21. State autonomy considerations prevailed over the dissent's concern for plaintiff's choice of forum and for judicial economy and efficiency. *See Id.* at 77–84, 62 S.Ct. at 20–24 (Jackson, J.; Stone, C.J.; Roberts, J.; and Reed, J., dissenting).

Three jurisdictions have explicitly applied the rules specified in *Indianapolis* to cases brought in diversity by a party seeking a declaratory judgment as to its rights and obligations in relation to other parties.[12] *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42 (3d Cir.1990); *Continental Airlines v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519 (9th Cir.1987); *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173 (5th Cir.1984). These jurisdictions require that the parties be aligned consistent with the primary dispute or according to their ultimate interests in the outcome. *Wausau*, 905 F.2d at 46; *Continental Airlines*, 819 F.2d at 1523; *Ingalls*, 723 F.2d at 1178.

Three other federal circuits, however, have declined to follow the precepts laid down by *Indianapolis* in the context of declaratory judgment actions brought in diversity. They do not distinguish primary and non-primary issues in determining proper party alignment. *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146 (7th Cir.1981); *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384 (10th Cir.), *cert. denied*, 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 119 (1978); *Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866 (8th Cir.1966). Instead, these circuits have concluded that the existence of an actual and substantial controversy between opposing parties, regardless of its relation to the primary matter in dispute, is sufficient to support federal diversity jurisdiction over these actions. *American Motorists*, 657 F.2d at 151 (court cited *Indianapolis* prin-

cipal purpose and controlling matter in dispute test, but did not apply it in analysis of controversy at issue); *Farmers Alliance*, 570 F.2d at 1387–88; *Universal Underwriters*, 367 F.2d at 871 (although court cited principal purpose test, did not apply it).

The Sixth Circuit has addressed very few cases involving proper party alignment where subject matter jurisdiction is based on diversity of citizenship. The court has recognized the general rule that unless antagonism dictates otherwise, parties should ordinarily be aligned according to "their real interests in the matter in controversy." *Reed v. Robilio*, 376 F.2d 392, 394 (6th Cir.1967). In *Reed*, an heir sued her father's ex-partners for breach of fiduciary duty to each of her parent's estates. Plaintiff joined the executors of her parents' estates as defendants because they were opposed to the lawsuit. The court declined to realign the executors as plaintiffs because though they shared common interests with the plaintiff, they had refused to sue and were antagonistic to plaintiff's claims. *Id.* at 397.

In this case, realigning the insurance companies on one side of the action would not be counter to any asserted interests or claims and, in fact, would be consistent with the ultimate matter in dispute. The parties' real interests revolve around construction of the insurance policy contracts. There is no evidence that any of the insurance companies aligned as defendants are antagonistic to USF & G's claims against the insureds. They have asserted similar allegations themselves in crossclaims.

USF & G brought a declaratory judgment action against the insureds and other insurance companies with which the insureds had policies. The controlling matter in dispute was and is the scope and coverage of the insurance policy contract that the insureds had with each insurance company. It is certainly true that USF & G's interests are adverse to the interests of the

---

**12.** The Sixth Circuit has not addressed party alignment in the context of a declaratory judg-

ment action brought in diversity.

other insurance companies in the sense that it would like to minimize its liability and maximize the liability of the other companies. If the insureds were not parties to the dispute, proper alignment would be according to the conflict between the insurance companies. The principal purpose of the suit and the controlling matter in dispute in this case, however, involve the construction, scope, and enforceability of each contract vis-a-vis the insured.

### Policy Considerations

Diversity jurisdiction is a doctrine of limited jurisdiction. It was intended to provide a non-biased forum for the out-of-state litigant. It was not intended, however, to arm foreign parties with a mechanism to avoid state courts in all instances. When a party's ultimate interests in the suit collide with the ultimate interests of a party from the same state, those parties should, as a general rule, be aligned on opposing sides, even though diversity jurisdiction will be lacking. In this case, the ultimate interests of Auto–Owners, a Michigan insurance company, collide with the interests of the Thomas parties, most of whom are Michigan citizens. Properly aligned, these parties stand on opposing sides, thus destroying diversity jurisdiction. Any potential prejudice toward USF & G as an out-of-state party will be diffused by alignment with Auto–Owners, an in-state party. C. Wright, A. Miller & E. Cooper, *supra*, § 3607, at 447.

Policy considerations in this case weigh in favor of realignment and dismissal.[13]

**13.** The statute of limitations for insureds' right to sue for collection under the insurance contracts has not yet begun to run because there has been no breach. Mich.Comp.Laws Ann. § 600.5807(8) (West 1987); *Strachura v. Metropolitan Life Ins. Co.,* 338 N.W.2d 187, 417 Mich. 1100.20 (1983); *Huhtala v. Travelers Ins. Co.,* 257 N.W.2d 640, 401 Mich. 118 (1977).

**14.** *See supra* note 5.

**15.** On July 10, 1986, Magistrate Rowland ordered the parties to brief the issue whether the Court should dismiss the case in light of recent Sixth Circuit opinions. *See American Home Assurance Co. v. Evans,* 791 F.2d 61 (6th Cir.1986); *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.,* 791 F.2d 460 (6th Cir.1986),

Validity, enforcement, and construction of insurance contracts is governed by state law. Thus, under *Erie* principles, this court must apply Michigan law to determine the scope and coverage of the insurance contracts at issue in this case.

At the time this complaint was filed, there were three pending state court cases arising out of the same pollution.[14] Plaintiff has admitted that complete resolution of the dispute in this case may have had res judicata or collateral estoppel effect on those cases. Plaintiff recognized that "the federal court's resolution of the duty to indemnify issues may well involve similar or even identical factual determinations." Plaintiff United States Fidelity and Guaranty Company's Brief Re Dismissal of Declaratory Judgment at 5.[15] Resolution of the duty to defend issues, in so far as the resolution reflects a judgment regarding construction of the precise scope and application of the policy terms, may also arguably have had res judicata and collateral estoppel effect in the state court proceedings. *See Americana Fabrics, Inc. v. L & L Textiles, Inc.,* 754 F.2d 1524, 1529 (9th Cir.1985) (state courts must give res judicata effect to federal court judgments) (citing *Stoll v. Gottlieb,* 305 U.S. 165, 170–71, 59 S.Ct. 134, 136–37, 83 L.Ed. 104 (1938); *Embry v. Palmer,* 107 U.S. (17 Otto) 3, 8–10, 27 L.Ed. 346 (1882)); *McLearn v. Cowen & Co.,* 660 F.2d 845, 848 (2d Cir.1981) (judgment after trial of state causes of action in federal court should be given res judicata effect in state courts).

*reh'g denied; Grand Trunk Western Railroad v. Consolidated Rail Corp.,* 746 F.2d 323 (6th Cir. 1986). The Sixth Circuit follows the rule that "[w]here complex factual issues are present and the action parallels a state court action arising from the same facts and where alternative remedies are available, declaratory judgment is inappropriate." *American Home Assurance Co.,* 791 F.2d at 64. Plaintiff USF & G argued in this case that the duty to defend claims were independent of the claims raised in the state court cases, thus distinguishing this case from those which the Sixth Circuit had dismissed. This Court decided to maintain jurisdiction over this declaratory judgment action on August 18, 1986. *See supra* note 7 and accompanying text.

At the time the complaint was filed, uncertainty existed in the Michigan courts as to application of the policy terms "sudden and accidental" to damages resulting from releasing polluting substances over a period of time.[16] That uncertainty has resulted in a conflict between the Michigan Court of Appeals and the Sixth Circuit. *Compare, e.g., Jonesville Prods., Inc. v. Transamerica Ins. Group,* 156 Mich.App. 508, 402 N.W.2d 46 (1986) (releases could be sudden and accidental even though they occurred over period of time; thus found duty to defend), *leave to appeal denied,* 428 Mich. 897 (1987); *Upjohn v. New Hampshire Ins. Co.,* 178 Mich.App. 706, 444 N.W.2d 813 (1989) (spill considered sudden and accidental even though occurred over three week period; thus found liability); *with, e.g., Intn'l Surplus Lines Ins. Co. v. Anderson Development Co.,* 901 F.2d 1368 (6th Cir.1990) (sudden and accidental does not include emissions occurring over period of time; thus no duty to defend); *FL Aerospace v. Aetna Casualty and Surety Co.,* 897 F.2d 214 (6th Cir.1990) (liquid waste contamination occurring over period of time not sudden and accidental; thus no duty to indemnify). Because Michigan's highest court has refused to decide this issue,[17] this Court must follow the Sixth Circuit. At the very least, it is foreseeable that should this Court enter a judgment in this case, it will be antithetical to what is currently controlling law in Michigan. This Court does not desire to infringe on the State's sovereignty. Michigan's highest court should provide the guidance for interpretation and construction of its own laws.

### Conclusion

Of course, federal courts frequently rule in diversity on issues under state law when the state's highest court has not decided the issue and the lower state courts have disagreed. Uncertainty in the state law is not reason alone for a federal court to abstain from exercising jurisdiction over a complaint, even if the federal court's ruling may have collateral estoppel or res judicata effect on cases pending in the state courts.

However, when a federal court has found that the parties in an action brought in diversity are not properly aligned according to the "principal purpose of the suit" and the "primary and controlling matter in dispute," they should in many cases be realigned despite the fact that diversity of citizenship is destroyed. Uncertainty in the state law, combined with the existence of pending state court cases arising out of the same nucleus of operative fact when the complaint was filed, are factors weighing in favor of realignment and dismissal of the case.

In this case, I find that the principal purpose of the suit is to determine the coverage and scope of each insurance policy purchased by the insureds—focusing on the duty to defend insureds and indemnification of insureds. The controlling matter in dispute is what each insurance company owes or doesn't owe each insured. Only after determining each company's liability to the insured can the court decide what, if anything, the companies may owe each other. Accordingly, I rule that the parties must be realigned to conform with the suit's principal purpose. All insurance companies should be on one side opposed on the other side by all the insureds. This realignment destroys diversity of citizenship because Auto–Owners and most of the Thomas Parties are Michigan citizens. Without diversity of citizenship, this Court does not have subject matter jurisdiction. This case must therefore be dismissed. Any pending nondispositive motions are denied as moot.

### JUDGMENT ORDER

In accordance with the opinion entered this date;

---

**16.** The policy provision at issue typically is an exception to the general provision excluding liability for environmental pollution. The policy provides that the exclusion does not apply if the polluting event is "sudden and accidental." *See* provisions in the CGL insurance policies issued by USF & G, St. Paul and Northbrook.

**17.** The Sixth Circuit certified this issue to the Michigan Supreme Court in *International Surplus Lines Ins. Co.,* 901 F.2d at 1368 n. 1., but the court declined to answer the question.

IT IS HEREBY ORDERED that the Motion by Defendant Auto–Owners Insurance Company for Realignment of Parties and Dismissal for want of Diversity Jurisdiction is GRANTED;

IT IS FURTHER ORDERED that Magistrate Rowland's June 1, 1990 Opinion and Order is VACATED;

IT IS FURTHER ORDERED that Auto–Owners Objections in Memorandum Brief regarding Magistrate's Opinion and Order, Dated June 1, 1990 are AFFIRMED;

IT IS FURTHER ORDERED that Grand Trunk Western Railroad Company's Motion for Reconsideration of the Opinion and Order dated June 1, 1990 or, in the alternative, Objections to the Magistrate's Report and Recommendation dated June 1, 1990 is GRANTED;

IT IS FURTHER ORDERED that this case is hereby DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that the Thomas parties' August 27, 1990 Motion for Leave to Amend Counterclaim and Amended Cross–Claim is DENIED AS MOOT.