376 F.2d 392
 Martha Cuneo REED, Plaintiff-Appellant,
v.
Albert F. ROBILIO, Mrs. Jennie G. Robilio, John S. Robilio, Rose Ann Robilio, Florence Rita Robilio Radogna, Union Planters National Bank of Memphis, Tennessee, and Roane Waring, Jr., Defendants-Appellees.
 No. 17174.
 United States Court of Appeals Sixth Circuit.
 April 11, 1967.
 
 Leo Kissam, New York City, for plaintiff-appellant, Chandler, Manire, Johnson & Chandler, Memphis, Tenn., Davis, Polk, Wardwell, Sunderland & Kiendl, Kissam & Halpin, New York City, on the brief.
 Jack Petree, Memphis, Tenn., for defendants-appellees, Evans, Petree, Cobb & Edwards, Memphis, Tenn., on the brief.
 Before WEICK, Chief Judge, and EDWARDS and PECK, Circuit Judges.
 JOHN W. PECK, Circuit Judge.
 
 
 1
 The sole question presented on this appeal is whether the District Court had jurisdiction of the case based upon diversity of citizenship. 28 U.S.C.A. § 1332.
 
 
 2
 Appellant is the sole heir of her late parents, Mr. and Mrs. Cuneo, who until their deaths owned a 50% interest in the Memphis, Tennessee, partnership of Robilio & Cuneo. In 1961 appellant commenced the instant action in the United States District Court for the Western District of Tennessee against the individual defendants, members of the Robilio family, seeking to establish a constructive trust upon the 30.66% interest of the partnership formerly owned by her late father and purchased by the defendants, and to cancel and reform a partnership agreement entered into between the Robilio defendants and Mrs. Cuneo with respect to the remaining 20% interest.
 
 
 3
 The basis for the first cause of action was that the defendants, as surviving partners, allegedly breached a fiduciary obligation to the estate of Mr. Cuneo, by concealing and failing to disclose material facts regarding the fair value of the 30% interest to the executor, Union Planters National Bank, and by purchasing the interest at a grossly inadequate price. The ground for the second cause of action was that the defendants allegedly breached their fiduciary obligation to their then partner, appellant's mother, by compelling her to enter into a partnership agreement which was grossly unfair to her when, as defendants allegedly knew, she was seriously ill and unable to comprehend the true significance of the agreement. The executors of the estates of both Mr. and Mrs. Cuneo, Union Planters National Bank and Roane Waring, Jr.,* respectively, were made parties defendant, because of their refusal to bring suit on behalf of the estates. A more complete history of the case may be found in the District Court's opinion reported at 248 F.Supp. 602.
 
 
 4
 Although appellant neither sought any relief as against the executors, nor charged them with any wrongdoing, both executors filed answers denying the material allegations of the complaint and asserting affirmatively the fairness of the respective transactions challenged. Union Planters National Bank (hereinafter the "Bank") also raised in its answer the defenses of laches and res judicata and asked that the complaint be dismissed. Further, the Bank participated in both the pretrial proceedings and the trial itself as a party adversary to appellant.
 
 
 5
 Appellant is a citizen of New York and the individual defendants and executors are, for diversity purposes, citizens of Tennessee. Several months after a five-week trial on the merits, but before a decision had been handed down, the District Court, sua sponte, dismissed the action for lack of jurisdiction, holding that the executors must be realigned as parties plaintiff for jurisdictional purposes since their interests in recovering anything lawfully due the respective estates from the Robilios coincided with plaintiff's interests. The court recognized the hostile attitude of the executors toward the claim asserted by appellant, but ruled that the executors would not be deemed defendants for diversity purposes unless their antagonistic and hostile attitude toward the claim was "reasonably required by the matters in controversy in support of some legitimate interest of the estate * * *." The court then proceeded to find that the estates had no valid interests opposed to the action brought on its behalf, and accordingly held that the antagonism on the executors' part was "irrelevant."
 
 
 6
 The rationale underlying the District Court's ruling that antagonism was irrelevant unless supported by some legitimate interest of the estate is embodied in the following:
 
 
 7
 "If the hostile attitude of an executor bearing no relationship to the interests of the estate is the test to determine its alignment, a federal court's jurisdiction would depend upon the mere whim or caprice of the executor. Under such a test jurisdiction once existing could be defeated merely by a change of attitude on the part of the executor. It seems obvious in such a case that a more objective standard should prevail."
 
 
 8
 This approach to the jurisdictional problem raised by the Bank's hostility toward the claim asserted on its behalf appears to be novel, and to the extent that the basic premise that jurisdiction once existing can be defeated is contrary to the generally accepted principle, it is of dubious validity.
 
 
 9
 Subsequent to argument in this Court, Roane Waring, Jr. was by order of the Probate Court of Shelby County, Tennessee, discharged as executor of the estate of Mrs. Cuneo. He is therefore no longer an indispensable party to any action involving that estate. With respect to this development, we adhere to our decision of Grant County Deposit Bank v. McCampbell, 194 F.2d 469, 31 A. L.R.2d 909 (6th Cir. 1952). In that case a party who at the time the action commenced was indispensable voluntarily disclaimed all his rights and interests in the subject matter in controversy, and as to him, the action was dismissed. This court upheld jurisdiction, stating:
 
 
 10
 "It appears well settled that if jurisdiction based on diversity of citizenship is defeated by the existence of parties who are not indispensable in an action, jurisdiction, although not existing at the time of filing, can be acquired by dismissing the action as to such parties. * * * We believe the rule is equally applicable where the parties who are dismissed are at the time of dismissal not indispensable parties, even though they may have been indispensable when the action was originally filed." Id. at 472-473. (Original emphasis.)
 
 
 11
 As to the second cause of action, the judgment of the District Court should be vacated and the cause remanded so that leave may be granted appellant to dismiss the action as to Roane Waring, Jr.
 
 
 12
 The remaining issue presented is whether, with respect to the first cause of action, the Bank was properly realigned as a party plaintiff for jurisdictional purposes.
 
 
 13
 At the outset, there appears to be no dispute over the generally recognized proposition that a federal court is not bound, in ascertaining whether jurisdiction exists because of diversity of citizenship, by the pleader's arrangement of the parties. See e.g., Venner v. Great Northern R. R. Co., 209 U.S. 24, 28 S.Ct. 328, 52 L.Ed. 666 (1908); City of Indianapolis v. Chase Nat. Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941). The dispute here centers around the propriety of the test employed by the District Court in realigning the Bank. Appellant's contention is basically that the Bank, because of its antagonism — evidenced by its refusal to sue and by its joinder with defendants in affirmatively trying to defeat the claim asserted on its behalf — is properly a party defendant. As might be expected, appellees support the decision of the District Court which, in effect, held that the interests of the Bank were controlling.
 
 
 14
 Parties to a lawsuit are, as a general rule, aligned for jurisdictional purposes in accordance with their real interests in the matter in controversy. Steele v. Culver, 211 U.S. 26, 29 S.Ct. 9, 53 L.Ed. 74 (1908); City of Indianapolis v. Chase Nat. Bank, supra; Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 523, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); Grant County Deposit Bank v. McCampbell, supra. This test is not, however, the exclusive one. In numerous cases, particularly stockholders' derivative suits where the question arises as to the proper alignment of the corporation, a party's "antagonism" is deemed controlling, regardless of that party's interests.
 
 
 15
 In the Supreme Court case of Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957), a stockholder's derivative case upon which appellant relies, the sole issue before the Court was whether the District Court had diversity jurisdiction. In that case the complainant sought to enforce the corporation's cause of action based on alleged fraudulent wastage of the corporate assets for the benefit of another party. After a preliminary hearing the District Court held that the interests of the corporation lay with the complainant, and that the management was not antagonistic to the "financial interests" of the corporation. The corporation was thus aligned with plaintiff, and the case dismissed for lack of complete diversity. The Supreme Court, in reversing the affirmance by the Court of Appeals, upheld jurisdiction, stating that the issue of antagonism should be determinable from "the face of the pleadings and by the nature of the controversy." The Court further stated:
 
 
 16
 "There will, of course, be antagonism between the stockholder and the management where the dominant officers and directors are guilty of fraud or misdeeds. But wrongdoing in that sense is not the sole measure of antagonism. There is antagonism whenever the management is aligned against the stockholder and defends a course of conduct which he attacks.
 
 
 17
 * * * * * *
 
 
 18
 "The management may refuse or fail to act for any number of reasons. Fraud may be one; the reluctance to take action against a close business associate may be another; honest belief in the wisdom of the course of action which the management has approved may be still another; and so on. * * * Whenever the management refuses to take action to undo a business transaction or whenever, as in this case, it so solidly approves it that any demand to rescind would be futile, antagonism is evident. The cause of action, to be sure, is that of the corporation. But the corporation has become through its managers hostile and antagonistic to the enforcement of the claim." Id. at 95, 96, 97, 77 S.Ct. at 1114-1116.
 
 
 19
 Two aspects of Smith deserve emphasis. First it is clear that the relevant consideration was whether there was antagonism "between the stockholder and the management," or stated differently, whether the corporation acting through its managers was hostile and antagonistic "to the enforcement of the claim." And second, "antagonism" which would require alignment of the corporation as a defendant is evident whenever, as reflected by the pleadings and the nature of the dispute, management "refuses to take action to undo a business transaction or whenever * * * it so solidly approves it that any demand to rescind would be futile * * *." To perhaps state the obvious, both criteria are fully met in the instant case upon substitution of the Bank (executor) for the corporation, and appellant for the complaining stockholder.
 
 
 20
 The District Court held that Smith should be limited to a "jurisdictional rule for corporate derivative suits," for reasons which are here felt to be unconvincing. Indeed, respectable authority supports the position that the alignment rule applicable to stockholders' suits is not far removed, if at all, from the rule applicable in derivative actions involving trustees, such as the one here. In Helm v. Zarecor, 222 U.S. 32, 32 S.Ct. 10, 56 L.Ed. 77 (1911), a dispute arose between two religious organizations over the possession and control of a corporation in which both organizations claimed an interest. The trial court dismissed the suit for lack of jurisdiction after realigning the corporation with plaintiffs. The Supreme Court reversed, stating that the alignment issue there presented was "not to be answered by applying the rule which governs suits by shareholders on behalf of a corporation, or by beneficiaries in the right of a trustee." Id. at 36, 32 S.Ct. at 12. See also Hellenthal v. John Hancock Mutual Life Ins. Co., 31 F.2d 997 (W.D.Wash.1929) where a party characterized as a beneficiary brought suit against a third person upon the trustee's refusal to do so. The court noted that as to the issue of whether the trustee should be aligned as a plaintiff, because of its antagonism, the beneficiary was in a position not unlike that of a stockholder suing on behalf of his corporation. Thus, until the Supreme Court limits Smith v. Sperling to corporate derivative suits, we decline to do so.
 
 
 21
 The pleadings in the case at bar reveal that there is a dispute between plaintiff and the Bank with respect to the existence of a cause of action; plaintiff has attempted to set forth a cause of action and the Bank has, in addition to denying the material allegations of the complaint and affirmatively asserting the fairness of the respective transactions, asserted affirmative defenses as a bar to recovery. On this point the parties are genuine adversaries, and it therefore cannot be said that there does not exist between the Bank and appellant a "collision of interests" or a bona fide "controversy", as the latter term is used in the statutory sense, which requires their alignment on opposite sides of the suit.
 
 
 22
 Collusion to satisfy the jurisdictional requirements may, of course, always be shown for the purpose of defeating jurisdiction, Smith v. Sperling, supra, 354 U.S. at 97, 77 S.Ct. 1112, but there is no indication that the controversy here is male fide or simulated in any manner.
 
 
 23
 In Hirsch v. Stone, 62 F.2d 120 (5th Cir. 1932), cert. denied, 289 U.S. 747, 53 S.Ct. 691, 77 L.Ed. 1493 (1933), a trustee of a deed of trust refused to bring a foreclosure action and attempted to resign as trustee; holders of notes secured by the deed of trust brought the foreclosure action naming the trustee as a party defendant. In reversing the District Court's dismissal of the action upon alignment of the trustee as plaintiff, the [Circuit] Court of Appeals stated:
 
 
 24
 "Further, though jurisdiction cannot be conferred by the collusive, colorable refusal of a trustee with title to sue (Hamer v. N. Y. Rys. Co., 244 U.S. 266, 37 S.Ct. 511, 61 L.Ed. 1125), neither can it be defeated by realigning with plaintiffs a trustee sued as defendant, who though he should be on the same side with plaintiffs, has taken a position antagonistic to them, and has refused to act in their behalf." Id. 62 F.2d at 122.
 
 
 25
 While the district judge here held that Hirsch should be limited to its alternative holding, we feel this view is overly restrictive and unwarranted.
 
 
 26
 To the same effect as Hirsch v. Stone, supra, is the dicta in Green v. Green, 218 F.2d 130 (7th Cir. 1954), cert. denied, 349 U.S. 917, 75 S.Ct. 606, 99 L.Ed. 1250 (1955). In this latter case, trust beneficiaries brought suit against the trustee for an accounting. The trustee's wife, Madge, a contingent beneficiary of the trust, was named as a defendant. The District Court denied defendants' motion to dismiss the action for lack of jurisdiction on the ground that Madge should be realigned as a party plaintiff. The Court of Appeals affirmed:
 
 
 27
 "[W]e do not believe that [Madge] should be realigned as a plaintiff. We think that on this phase of the situation Judge SCHNACKENBERG has placed too much reliance upon what appears only from the complaint * * and not enough to subsequent pleadings and proceedings in the case, as well as the attitude and conduct of Madge toward the controversy. Steele v. Culver, 211 U.S. 26, 29, 29 S.Ct. 9, 53 L.Ed. 74, is cited in support of the statement that it is significant that no relief was prayed against Madge. That is true, of course, but it is of far greater significance that Madge by answer joined her husband, Herschel, in denying each and every alleged act of wrongdoing on his part, as alleged in the complaint, and prayed for its dismissal. Thus we have a situation where the plaintiffs have stated and seek to go forward with a cause of action against Herschel, while Madge has joined Herschel in an effort to erect an insurmountable blockade and to defeat the action at its threshold.
 
 
 28
 * * * * * *
 
 
 29
 "It is not open to question but that Madge joined her husband, Herschel, on his side of the controversy and has assumed an uncompromising attitude of hostility toward the plaintiffs and their maintenance of the suit. Under such circumstances, this court should permit her to remain on the side where she and her counsel for more than two years thought she belonged." Id., 218 F.2d at 144, 145.
 
 
 30
 Several other matters deserve comment. In the case at bar, the District Court found that there was hostility by the Bank toward the asserted claim, but concluded that it was not the hostility "of executors, but of individuals," since it was motivated by personal considerations and not by the interests of the estate. However, since the Bank has acted only in the capacity of executor throughout the entire proceedings, the hostility or antagonism has clearly been that of the executor, regardless of the underlying reason or motivation.
 
 
 31
 Also the District Court observed that "were it not for the executors' reluctance to sue, they, not the plaintiff, would be the parties asserting these claims, and this Court would clearly have no jurisdiction of such an action." While this is undoubtedly true, the fact remains that in asserting the claim herein, appellant, a New York resident, was in fact opposed not only by the individual defendants accused of the wrongdoing, all of whom are Tennessee residents, but by the executor representing the estate on whose behalf the claim was asserted, the latter being a corporation chartered by the United States with its principal place of business in Memphis, Tennessee. In these circumstances, permitting appellant to litigate the asserted claim (which will, in effect, benefit only appellant if successful, she being the sole heir) in a federal court would certainly appear to be appropriate in light of the historical and theoretical justification for diversity jurisdiction.
 
 
 32
 In conclusion, a complete review of the applicable authorities reveals that the Bank was properly aligned as a party defendant because of its antagonism toward appellant and the claim asserted by her, and the District Court erred in realigning the Bank with the plaintiff when ascertaining whether diversity of citizenship existed. Accordingly, the judgment of the District Court as to the first cause of action is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 *
 Although referred to as "executor," Mr. Waring is actually a co-executor, along with appellant