905 F.2d 42
 EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, Appellant,
v.
CROWN CORK & SEAL COMPANY, INC., Aetna Casualty & Surety
Company, Continental Insurance Company, Insurance Company of
North America, Lumbermen's Mutual Casualty Company,
Firemen's Fund Insurance Company, and Allianz Underwriters, Inc.
Appeal of CROWN CORK & SEAL COMPANY, INC.
 No. 89-1648.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 24, 1990.
Decided June 12, 1990.
 
 Wm. Gerald McElroy, Jr., Martin E. Levin (argued), Zelle & Larson, Waltham, Mass., Steven Kudatzky, Tomar, Simonoff, Adourian & O'Brien, Haddonfield, N.J., for appellant.
 Michael J. Stack, Jr., Stack & Gallagher, Philadelphia, Pa., Gregory J. Castano (argued), Kenneth D. McPherson, Jr., Salvatore A. Giampiccolo, Waters, McPherson, McNeill, Secaucus, N.J., for appellee, Crown Cork & Seal Co., Inc.
 Before SLOVITER, HUTCHINSON and COWEN, Circuit Judges.OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 Facts and Procedural History
 
 1
 Plaintiff, Employers Insurance of Wausau (Wausau), alleges that it is one of seven insurance companies which issued comprehensive general liability and/or excess umbrella policies to Crown Cork & Seal Company, Inc. (Crown) spanning a period of approximately 25 years. Crown has been named as a defendant or a potentially responsible party in claims arising out of alleged environmental hazards at more than twenty waste disposal sites located throughout the country. On February 19, 1988 Crown filed a complaint in the New Jersey Superior Court, Law Division, against Wausau, Aetna Casualty & Surety Company (Aetna), Insurance Company of North America (INA), Continental Insurance Company (Continental), Lumbermen's Mutual Casualty Company (Lumbermen's), Firemen's [sic] Fund Insurance Company (Fireman's), and Allianz Underwriters, Inc. (Allianz), seeking, inter alia, a declaration of the obligations of the insurers to indemnify and defend Crown in the underlying actions. On December 12, 1988, approximately ten months after Crown filed its New Jersey action,[1] Wausau filed this suit in district court, naming as defendants Crown and the other insurers who are Wausau's co-defendants in Crown's New Jersey state action. Wausau seeks a declaration, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. Sec. 2201, "of the scope and nature of its obligations and those of the defendant [insurers], if any, as the issuers of certain comprehensive general liability ("CGL") insurance policies and excess umbrella liability insurance policies providing coverage to the defendant [Crown]." App. at 6-7. Wausau alleged that the district court had subject matter jurisdiction under 28 U.S.C. Sec. 1332, as the amount in controversy is in excess of $10,000 and the matter "is between citizens of different states." App. at 7.
 
 
 2
 Crown moved in the federal action to realign the defendant insurers as plaintiffs with Wausau on the ground that all of the insurance carriers have a "consonant interest" in avoiding liability for either defense or indemnification of Crown. App. at 19. Crown argued that if the parties were realigned, complete diversity would be destroyed, as Crown, the defendant, and INA, a realigned plaintiff, are both citizens of Pennsylvania. Crown argued, in the alternative, that even if the parties were not realigned, the court should dismiss or stay the action "in favor of the first-filed state court action" pending in the New Jersey Superior Court. App. at 21-22.
 
 
 3
 In a Memorandum and Order dated June 28, 1989, the district court, without deciding the jurisdiction issue, granted Crown's motion for a stay, noting that if "the scope of the New Jersey action is not limited by a decision of the New Jersey Courts, the parties can anticipate that [the district] court will decline to entertain Wausau's declaratory judgment action and will dismiss the suit." App. at 127-28.[2] The court reasoned that it had the discretion to stay the action under the Declaratory Judgment Act or, in the alternative, on abstention grounds, as enunciated in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and its progeny. The court declined to make findings on Crown's motion for realignment, although it did note that "the jurisdictional difficulties threaten to delay, if not terminate, the progress of th[e] action" in federal court, therefore further justifying a stay in favor of the pending New Jersey action. Wausau filed this timely appeal.[3]
 
 II.
 Jurisdiction
 
 4
 On appeal, the parties have briefed primarily the question whether the district court properly stayed this action in light of the pending New Jersey action, and have given only secondary consideration to whether the defendant insurers should be realigned as plaintiffs with Wausau. We turn first to Crown's motion for realignment because it impacts upon the district court's jurisdiction.
 
 
 5
 It is an elementary principle that federal courts are courts of limited jurisdiction, empowered to hear cases only as provided for under Article III of the Constitution and congressional enactments pursuant thereto. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). Consequently, "[a] federal court is bound to consider its own jurisdiction preliminary to consideration of the merits." Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia, 657 F.2d 29, 36 (3d Cir.1981). Moreover, "every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.' " Bender, 475 U.S. at 541, 106 S.Ct. at 1331 (quoting Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934)); see Lewis v. International Brotherhood of Teamsters, Local Union No. 771, 826 F.2d 1310, 1312 (3d Cir.1987).
 
 
 6
 The district court's grant of the stay amounts to the exercise of its dominion over this matter, clearly presupposing that it had subject matter jurisdiction in the first instance. It was therefore bound to first consider Crown's challenge to the diversity between the parties raised in Crown's motion for realignment before it granted the stay. We, in turn, must satisfy ourselves that the district court had subject matter jurisdiction before considering whether it properly stayed the action. See Colorado River Water Conservation District v. United States, 424 U.S. 800, 806, 96 S.Ct. 1236, 1240, 47 L.Ed.2d 483 (1976). Indeed, we would be obliged to consider, sua sponte, whether the district court had subject matter jurisdiction over this action even if Crown had not continued to press the realignment issue on appeal. See Trent, 657 F.2d at 31.
 
 
 7
 In order to sustain jurisdiction based on the diversity of the parties, there must exist an " 'actual,' 'substantial' controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side." Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941) (citations omitted). In determining whether there is the necessary "collision of interests," the court must look at the " 'principal purpose of the suit' and the 'primary and controlling matter in the dispute.' " Id. (citations omitted). The parties' determination of their alignment cannot confer jurisdiction upon the court. Although the pleadings are relevant, it is the court's duty to " 'look beyond the pleadings and arrange the parties according to their sides in the dispute.' " Id. (quoting Dawson v. Columbia Trust Co., 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713 (1905)). The Court has since explained that in ruling on realignment, the courts are "to determine the issue of antagonism on the face of the pleading and by the nature of the controversy." Smith v. Sperling, 354 U.S. 91, 96, 77 S.Ct. 1112, 1115, 1 L.Ed.2d 1205 (1957).
 
 
 8
 A determination of whether there is a collision of interests must be based on the facts as they existed at the time the action was commenced. 3A Moore's Federal Practice p 19.03, at 56 (1989). A court may, however, look at subsequent pleadings and proceedings in a case to determine the position of the parties, but only to the extent that they "shed light on the facts as they existed at the outset of the litigation and on the actual interests of the parties." American Motorists Ins. Co. v. Trane Co., 657 F.2d 146, 151 n. 3 (7th Cir.1981).
 
 
 9
 This court has adhered to the "principal purpose" test enunciated by the Supreme Court in Indianapolis. See Ackerman v. Hook, 183 F.2d 11, 14-15 (3d Cir.1950). Although other courts have apparently deviated from this test in favor of a determination as to whether there is any "substantial conflict," regardless of whether it concerns primary or non-primary issues, see Fidelity and Deposit Co. v. Sheboygan Falls, 713 F.2d 1261, 1267 (7th Cir.1983), we agree with the Ninth Circuit that Indianapolis requires a real dispute on a primary issue in the controversy, see Continental Airlines Inc. v. Goodyear Tire & Rubber Co., 819 F.2d 1519, 1523 n. 2 (9th Cir.1987).
 
 
 10
 Crown contends that the primary dispute is not between Wausau and the other insurers but between it, as the insured, and all of the insurers, who seek to avoid any liability under the relevant policies. Wausau acknowledges that each insurer will seek to avoid liability to Crown under its respective policy.[4] Several courts have held that the mere fact that every insurer seeks to avoid liability does not necessarily require a finding in every such case that all of the insurers must be aligned against the insured. See Trane, 657 F.2d at 150, 151 (7th Cir.1981); Universal Underwriters Ins. Co. v. Wagner, 367 F.2d 866, 870-71 (8th Cir.1966); United States Fidelity & Guaranty Co. v. Korman Corp., 693 F.Supp. 253, 257 (E.D.Pa.1988); Liberty Mut. Ins. Co. v. Insurance Corp. of Ireland, 693 F.Supp. 340, 343-44 (W.D.Pa.1988); American Mut. Liability Ins. Co. v. Flintkote Co., 565 F.Supp. 843,846 (S.D.N.Y.1983). Cf. C.Y. Thomason Co. v. Lumbermens Mut. Cas. Co., 183 F.2d 729, 733 (4th Cir.1950) (collision of interest found between insurer and provider of surety bond for contractor).
 
 
 11
 Wausau argues that the present alignment is proper because there is a substantial controversy between itself and the other insurers in that each has an "interest in obtaining judicial rulings which will implicate the policies issued by the other insurers, rather than itself." Appellant's Reply Brief at 10. It points to two potential sources of antagonism.
 
 
 12
 First, Wausau contends that because the various insurance policies cover different time periods, there will be a "trigger of occurrence" controversy among the insurers. Appellant's Reply Brief at 11. Second, Wausau argues that excess insurers will seek to have indemnification costs spread over a period of time and among as many primary carriers as possible so that the excess coverage will not be reached, while primary carriers will seek to concentrate such costs in any one year to prevent carry over into other years for which they are also liable as primary carriers.
 
 
 13
 However, the mere fact that there are real disputes among the insurers as to the "trigger of occurrence" and the distribution of coverage between primary and excess carriers does not necessarily permit their alignment into separate camps when the insured is also a party with interests antagonistic to all. It will be necessary to ascertain whether the disputes among the insurers are, as a practical matter, merely subsidiary issues to a more fundamental dispute between the parties with respect to the coverage of these types of policies over the types of claims asserted against Crown. A determination of the ultimate interests in the outcome of this litigation is a complex issue affecting all the named parties.
 
 
 14
 Appellate courts on occasion have been in a position to decide the realignment issue in the first instance. See, e.g., Lowe v. Ingalls Shipbuilding, 723 F.2d 1173, 1178 (5th Cir.1984); Sheboygan Falls, 713 F.2d at 1266-68. Crown requests us to do so here in lieu of remanding. We conclude that this is not an appropriate occasion for such action. We have examined the record in the district court and find that it includes only one of the relevant insurance policies, that issued by Lumbermen's. The other insurance companies, who are parties to the lawsuit in the district court, have refrained from participating in this appeal, apparently because they took no issue with the order appealed from, i.e. the stay of the action. They have substantial interests in the definition of the primary issue in the litigation for purposes of diversity jurisdiction, and we are unwilling to deprive them of the opportunity to be heard merely because they may not have anticipated that we would inquire into subject matter jurisdiction despite the district court's failure to address the issue.[5]
 
 
 15
 We will therefore remand to the district court so that it can undertake the inquiry into the threshold question every federal court must decide ab initio, that of its subject matter jurisdiction. In this case, that requires a decision on what is the primary issue that divides the parties. In light of the question on jurisdiction, we express no opinion as to whether a stay was or continues to be appropriate.
 
 III.
 Conclusion
 
 16
 For the foregoing reasons, we will vacate the district court's order and remand this action to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 Wausau contends, and Crown does not contest, that Crown did not mail the summons in the state court action until December 12, 1988, the same day that Wausau filed this action, and that Wausau did not receive the summons until December 15, 1988 three days after the federal suit was filed
 
 
 [2]
 The reference in the stay order to a decision of the scope of the New Jersey action was apparently an allusion to Wausau's then pending motion for dismissal in the New Jersey action based on forum non conveniens, and the parties' disagreement on which state's law applied to the action. The motion to dismiss on forum non conveniens grounds was denied by the Superior Court and leave to appeal was denied by the New Jersey Supreme Court on September 21, 1989. On the choice of law question, the Superior Court, relying on Westinghouse Electric Co. v. Liberty Mutual Ins. Co., 559 A.2d 435, 233 N.J.Super. 463 (App.Div.1989), held that New Jersey law should apply to the action. Wausau's motion for interlocutory review of this order was denied by the New Jersey Appellate Division on September 18, 1989
 
 
 [3]
 Crown moved to dismiss the appeal on the ground that the district court's stay order was not appealable. As we recently noted in Schall v. Joyce, 885 F.2d 101, 104 (3d Cir.1989) (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)), "a district court stay order grounded on the pendency of similar litigation in state court may be appealable under section 1291." We decline to engage in the chicken-or-egg colloquy with respect to appealability versus subject matter jurisdiction, and address first the subject matter jurisdiction of the district court, which is dispositive of the appeal before us
 
 
 [4]
 Each insurer, in responding to Wausau's complaint, has in fact denied liability to Crown. All but one have based such denial on the ground, inter alia, that the underlying claims against Crown at the hazardous sites do not involve allegations of an "accident" or "occurrence" within the meaning of each insurer's policy
 
 
 [5]
 The diversity issue depends not only on realignment but also on Crown's citizenship. Although Wausau in its complaint and Crown in its motion for realignment both allege that Crown's principal place of business is in Pennsylvania, where INA is also a citizen, we note that in the district court INA questioned Crown's citizenship, an issue that the district court will also need to address on remand