UNITED STATES FIDELITY AND GUARANTY CO., Canadian Universal Insurance Co., Inc., Allstate Insurance Co., successor in interest to Northbrook Excess & Surplus Insurance Co., St. Paul Fire and Marine Insurance Co., Great American Surplus Lines Insurance Co., Admiral Insurance Co., First State Insurance Co., Guaranty National Insurance Co., Gibralter Casualty Co., Hartford Accident & Indemnity Co., Northstar Re–Insurance Co., Plaintiffs–Appellants,

v.

THOMAS SOLVENT CO., Thermo–Chem, Inc., Continental Casualty Co., Auto–Owners Insurance Co., Idea Mutual Insurance Co., Richard E. Thomas, Thomas Development, Inc., Thomas Solvent Company of Muskegon, Inc., TSC Transportation, Inc., Thomas Solvent, Inc. of Indiana, Cora B. Adkins, Alliance for a Livable Environment, Thomas Solvent Company of Detroit, Grand Trunk Western Railroad Co., Defendants–Appellees.

Nos. 91–1013 to 91–1018 and 91–1020 to 91–1023.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 16, 1991.

Decided Feb. 4, 1992.

John W. Allen, Howard & Howard, Kalamazoo, Mich. (argued and briefed), for defendant-appellee Auto–Owners Ins. Co.

Todd R. Dickinson, Tolley, Fisher & Verwys, Grand Rapids, Mich. (argued and briefed), for defendant-appellant Allstate Ins. Co.

Jay E. Brant, Mark A. Goldsmith, Philip A. Grashoff, Jr., Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for intervenor Richard E. Thomas.

Before KEITH and NORRIS, Circuit Judges, and JOHNSTONE, District Judge.*

KEITH, Circuit Judge.

Plaintiff United States Fidelity and Guaranty Company ("USF & G") appeals from the district court's order of October 30, 1990, 132 F.R.D. 660, to realign the parties in this action and to dismiss the case for lack of subject matter jurisdiction. For the reasons set forth below, we AFFIRM.

I. BACKGROUND

Defendant Thomas Solvent Company ("Thomas Solvent") operated chemical distribution facilities in Battle Creek, Michigan, from 1963 until 1986. From 1970 to 1981, the company was licensed by the State of Michigan as a liquid waste hauler and handled liquid industrial wastes. In 1981, the Michigan Department of Public Health discovered that a well-field which supplied water for the Battle Creek Municipal Water System was contaminated with organic chemicals. Thomas Solvent was one of several sources suspected of causing the pollution. The United States Environmental Protection Agency and the State of Michigan commenced actions against Thomas Solvent seeking injunctive relief and penalties. Thomas Solvent sought coverage from its insurers for expenses arising out of these actions. All of the insurers, except USF & G, denied coverage.

* The Honorable Edward H. Johnstone, United States District Judge for the Western District of Kentucky, sitting by designation.

On September 18, 1985, USF & G instituted the present suit against Thomas Solvent, Thermo–Chem, and insurers of Thomas Solvent and related corporate entities (collectively "defendants"). The action was subsequently joined by other parties, including TSC Transportation Company, Thomas Development Company, Thomas Solvent Company of Detroit, Thomas Solvent Inc. of Indiana, Thomas Solvent Company of Muskegon, Richard E. Thomas and Letha Thomas (collectively, with Thomas Solvent and Thermo–Chem, the "Thomas Parties"), additional insurers, and parties asserting claims against certain or all of the Thomas Parties in various actions being litigated in the Michigan and federal courts. The case was filed in federal court on the basis of diversity jurisdiction.

In this action, USF & G initially sought a declaration that it did not have a duty to defend or indemnify any of the Thomas Parties. USF & G argued that if the district court determined that USF & G did have a duty to defend or indemnify the Thomas Parties, then that duty was shared by the defendant insurance companies. On January 8, 1988, the district court issued an opinion finding that certain of the insurers had a duty to defend certain of the Thomas Parties in the underlying actions. The district court did not determine whether the insurance companies had a duty to indemnify.

On October 5, 1989, USF & G filed a motion for realignment of the parties. On November 30, 1989, the magistrate-judge assigned to this case requested briefs on the issue of whether alignment would destroy diversity jurisdiction. One of the insurers, Auto–Owners Insurance Company ("Auto–Owners"), filed a motion in favor of realignment and for dismissal of the case for lack of subject matter jurisdiction. Auto–Owners contended that because all of the insurance companies sought a declaration that they had no duty to indemnify the Thomas Parties, they should be aligned together against the Thomas Parties. Since both Auto–Owners and some of the Thomas Parties are citizens of Michigan, such a realignment would destroy diversity jurisdiction and require dismissal of the entire action. Auto–Owners further contended that the order realigning the parties should be *nunc pro tunc* since the district court lacked jurisdiction at the outset. Such an order would render all action in the district court void.

On June 1, 1990, the magistrate-judge issued an opinion and order denying USF & G's and Auto–Owners' motions to realign the parties. The magistrate-judge concluded that "because the leading issue is which insurer owes what to whom, the court finds that all the insurance companies' interests are sufficiently in conflict to satisfy the actual, substantial controversy test." On the basis of his finding that there existed an "actual" and "substantial" conflict among and between the insurers, the magistrate-judge held that the district court had diversity jurisdiction.

Auto–Owners and Intervenor Grand Trunk Western Railroad Company ("Grand Trunk") filed motions for reconsideration and/or objections to the magistrate-judge's opinion and order, asking the district court to order realignment and to dismiss the action for lack of diversity. USF & G filed a response supporting the outcome reached by the magistrate-judge. The Thomas Parties filed a memorandum supporting Auto–Owners' motion.

On October 30, 1990, the Honorable Richard A. Enslen issued an opinion on the exceptions taken to the magistrate-judge's decision on realignment and diversity. Reviewing the magistrate-judge's decision *de novo*, Judge Enslen held that Auto–Owners' motion to realign the parties *nunc pro tunc* should be granted and the case dismissed for lack of subject matter jurisdiction. Judge Enslen concluded that the parties must be aligned according to the "principal purpose of the suit[;]" that is, "what each insurance company owes or doesn't owe each insured." This placed the Thomas Parties and intervenors on one side of the dispute and all of the insurers on the other. Since one of the insurers, Auto–Owners, is a Michigan company, and one or more of the Thomas Parties are Michigan citizens, the district court found a lack of diversity and dismissed the case.

USF & G filed a timely appeal, arguing that the parties in this action should not have been realigned so as to destroy diversity jurisdiction.

## II. DISCUSSION

### A. Standard of Review

Initially, we must determine whether the district court applied the proper standard of review in reversing the magistrate-judge's denial of Auto–Owner's motion for realignment and dismissal. The district court reviewed the magistrate-judge's ruling *de novo*.

A magistrate-judge is granted authority under 28 U.S.C. § 636, which provides in part:

(b)(1) Notwithstanding any provision of law to the contrary—

(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, *except* a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A) (emphasis added). While most actions by a magistrate-judge are reviewed for clear error, a district court has *de novo* review of a magistrate-judge's ruling on dispositive motions, such as those excepted under subsection (A). *See Roland v. Johnson*, 856 F.2d 764, 768–69 (6th Cir.1988). USF & G argues that the magistrate-judge's ruling on realignment was not a dispositive ruling and the district court should have applied a clearly erroneous standard of review.

USF & G contends that the magistrate-judge made two distinct determinations: (1) that realignment was improper, and (2) that

the court had subject matter jurisdiction. USF & G argues that the issue of realignment required a nondispositive determination. Therefore, the district court should have applied a clearly erroneous standard of review to the magistrate-judge's determination on realignment.

The district court disagreed that the issues raised by Auto–Owner's motion should be bifurcated for determining the standard of review as suggested by USF & G. The district court noted that Auto–Owners raised the issue of realignment for the sole purpose of having the case dismissed for lack of subject matter jurisdiction. It sought realignment *nunc pro tunc*, arguing that the parties were improperly aligned when the action was initially filed in federal court. Accordingly, the district court reasoned that the essential issue raised by Auto–Owner's motion was whether diversity jurisdiction existed at the time the action was initiated. The district court concluded that this was a dispositive issue over which it had *de novo* review.

We agree with the district court's analysis and conclusion. The determination whether to realign the parties in this action would automatically either destroy or preserve diversity jurisdiction. Therefore, the issues of realignment and diversity jurisdiction were not severable for the purpose of determining the proper standard of review. The magistrate-judge's denial of Auto–Owner's motion was, in effect, a dispositive ruling, and the district court properly reviewed that ruling *de novo*.

### B. Realignment of the Parties

We now turn to the district court's substantive determination to realign the parties in this action, thereby destroying diversity jurisdiction and requiring dismissal of the case. The district court held that "the principal purpose of the suit and the controlling matter in dispute in this case, [ ] involve the construction, scope, and enforceability of each contract vis-a-vis the insured." Accordingly, the district court ruled that the parties should be realigned so that the insured parties were on one side

of the lawsuit and the insurers were on the other side. Because this alignment destroyed diversity jurisdiction, the district court dismissed the case. We agree with this result.

Our jurisdiction in this case is based solely on diversity. It is axiomatic that there must be complete diversity between the parties of an action to support diversity jurisdiction. *See Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). In addition, an "actual and substantial" controversy must exist between the parties. *See Indianapolis Gas v. Chase National Bank*, 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941). Moreover, it is well established that:

> [t]he courts, not the parties, are responsible for aligning the parties according to their interests in the litigation. If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes.

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir.1987) (emphasis added).

In *Indianapolis Gas*, the Supreme Court established a general test for determining the appropriate alignment of parties in an action where federal jurisdiction is based on diversity. The Court stated that "whether the necessary 'collision of interests' ... exists, is [ ] not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit,' ... and the 'primary and controlling matter in dispute.'" *Id.* (citations omitted).

The Supreme Court agreed with the district court's conclusion in *Indianapolis Gas* that there was "no collision between the interests of the plaintiff and the interests of the [defendant]" as originally aligned in that action. The Supreme Court concluded that "only one question" permeated the case; "[t]his [was] the 'primary and controlling matter in dispute.' The rest [was] window-dressing designed to satisfy the requirements of diversity jurisdiction." *Id.* at 72, 62 S.Ct. at 18. Accordingly, the Supreme Court held that the *Indianapolis Gas* parties should have been realigned according to this dispute and that diversity jurisdiction was lacking.

As applied to the present case, we agree with the Third, Fifth and Ninth Circuits that *Indianapolis Gas* requires that parties be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment. *See Employers Insurance of Wausau v. Crown Cork and Seal Company, Inc.*, 905 F.2d 42 (3rd Cir.1990); *Continental Airlines v. Goodyear Tire and Rubber Co.*, 819 F.2d 1519 (9th Cir.1987); and *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173 (5th Cir.1984). Thus, despite the fact that there may be actual and substantial ancillary or secondary issues to the primary issue, the parties should be aligned in accordance with the primary issue in an action.

We recognize that there is an actual conflict between the parties as originally aligned in this case. USF & G brought this action seeking a declaratory judgment of the obligations of the various insurers in order to receive contribution from those insurers who shared an obligation with USF & G to the insured parties. USF & G's request for contribution is adverse to the interests of the other insurers. We agree with the district court, however, that the primary issue in this case is whether the insurers have a duty to indemnify any of the Thomas Parties. Depending on the district court's determination of this latter issue, the contribution issue may be moot.

USF & G argues that *Indianapolis Gas* does not mandate realignment in the instant case since there is more than one actual, substantial issue involved in this case. USF & G urges that the district court should not have realigned the parties because there was an actual, substantial conflict between the parties as aligned. In other words, the district court should not have attempted to flesh out a "primary" dispute where there was more than one legitimately disputed issue.

USF & G cites a Seventh Circuit case, which is factually similar to the present action, in support of its proposition. *See American Motorists Insurance Co. v. Trane Company*, 657 F.2d 146 (7th Cir. 1981). In *American Motorists*, Trane, a Wisconsin corporation, sued several contractors who allegedly breached their contracts with Trane. Trane solicited its insurers for defense against the adverse claims. All of the insurers refused to defend Trane. One of the insurers, American Motorists, filed an action in federal court seeking a declaration of the rights and liabilities of itself and the defendant insurers. Subsequently, one of the defendant insurers filed a motion for realignment of another of the insurers, Employers Mutual Liability Insurance Company of Wisconsin ("Employers"). Such an action would defeat diversity jurisdiction. The district court granted the motion to realign and dismissed the case.

The Seventh Circuit reversed the district court's order to realign. The Court ruled on the basis that there was an actual and substantial controversy between the parties as aligned in the original action. American Motorists would benefit from a holding requiring Employers to defend Trane, but that holding would be adverse to Employers' interest. The Court reasoned that realignment is only proper "where there is no actual, substantial conflict between the parties that would justify placing them on opposite sides of the lawsuit." *Id.* at 151. Because there was an actual, substantial conflict between the parties as aligned, the Court held that realignment was improper.

We reject the test adopted by the Seventh Circuit in determining proper alignment of parties in an action where federal court jurisdiction is based on diversity. As noted above, we agree with other circuits which have adhered to the "primary dispute" test for determining proper alignment of the parties in an action, even where there is more than one dispute. In another factually similar case, the Third Circuit determined that the "primary dispute" test should govern alignment. *See Employers Insurance of Wausau v. Crown Cork & Seal*, 905 F.2d 42 (3rd Cir. 1990).

In *Crown Cork & Seal*, plaintiff, Wausau, was one of several insurance companies that had issued policies to Crown. Crown was sued for improper waste disposal and brought a declaratory action in state court against its insurers regarding their duty to defend. Wausau filed a federal action against Crown and the other insurers seeking a declaration of the scope and nature of obligations that it and the other insurers owed to Crown. Crown moved to realign the defendant insurers as plaintiffs with Wausau because all of the insurers had a common interest in avoiding liability for either defense or indemnification of Crown, an action which would destroy diversity jurisdiction.

The district court did not decide the realignment issue. On appeal, however, the Third Circuit addressed this issue first because of the impact of realignment on jurisdiction. The Court initially noted that "[i]n determining whether there is the necessary 'collision of interests,' the court must look at the '"principal purpose of the suit" and the "primary and controlling matter in the dispute."' ... The parties' determination of their alignment cannot confer jurisdiction upon the court." 905 F.2d at 45 (citations omitted). Recognizing that "other courts have apparently deviated from this test in favor of a determination as to whether there is any 'substantial conflict,' regardless of whether it concerns primary or non-primary issues, ... we agree with the Ninth Circuit that *Indianapolis* requires a real dispute on a primary issue in the controversy." *Id.* at 46. The Court remanded the case to the district court to determine the primary issue that divided the parties.

The district court has made that precise determination in this case, and we agree with the district court's conclusion that the insurers' duty to indemnify is the primary dispute. The issue of contribution can only be addressed after the court has determined which of the various insurers have a duty to indemnify particular Thomas Parties. Moreover, if the insurers are held not

to owe a duty to indemnify any of the Thomas Parties, then the issue of contribution is moot. Therefore, it is clear that the contribution issue is ancillary to the issue of whether the insurers' have a duty to indemnify the Thomas Parties.

USF & G argues that the Sixth Circuit has already adopted the "actual and substantial conflict" test, rather than a "primary purpose" test, for determining whether parties should be realigned. *See Reed v. Robilio,* 376 F.2d 392 (6th Cir. 1967). In *Reed* this Court held that "antagonism" between the parties supported their original alignment, despite common interests between some of the oppositely aligned parties. USF & G interprets *Reed* to stand for the proposition that as long as there is an actual conflict between parties who are aligned on opposite sides of an action, then the alignment is appropriate. We disagree with this interpretation of *Reed.*

In *Reed,* plaintiff was the sole heir of her late parents, who owned a 50% interest in a partnership. Plaintiff brought an action against family members, who were surviving partners of the partnership, for breach of their fiduciary duties with regard to certain transactions. Plaintiff also made the executors of her parents' estates defendants in the action because of their refusal to bring suit on behalf of the estates. Although plaintiff did not seek relief against them, the executors filed answers denying the material allegations of plaintiff's complaint and affirmatively asserting the fairness of the challenged transactions.

The district court realigned the parties in *Reed* so that the executors were made party plaintiffs. The district court reasoned that the executors' interests in recovering from the surviving partners coincided with plaintiff's interests. Thus, the district court ruled that the executors' hostile attitudes toward the claims asserted by plaintiff were irrelevant since they had no valid interests opposed to the action brought on their behalf. This Court reversed, holding that the antagonism between plaintiff and the executors made them genuine adversaries and that there was a "collision of interests" or "bona fide controversy" between them. Accordingly, the parties were properly aligned on opposite sides of the suit.

Our holding—that parties should be aligned according to the primary dispute in an action—is not inconsistent with *Reed.* In *Reed,* the district court erred in realigning the plaintiff and the executors because they had no common *dispute* against the defendants. Despite the fact that the executors stood to gain from plaintiff's action against the surviving partners, there was no controversy between the executors and those defendants. The executors in *Reed* had a single dispute, and that was whether they had a duty to assert a claim against the surviving partners for breach of their fiduciary duties. This Court ruled that the parties were properly aligned with respect to that dispute. Thus, we conclude that *Reed* is simply inapposite to the present case and offers no support of USF & G's position that the primary dispute test is inapplicable.

In the instant case, the district court found that there were two distinct issues in dispute, but the primary dispute involved the insurers' duties to indemnify the Thomas Parties. All of the insurance companies opposed the Thomas Parties on this issue, and the district court realigned the parties accordingly. We agree with the district court that proper alignment of the parties in this action destroys diversity jurisdiction.

## III. CONCLUSION

For the above stated reasons, we affirm the order of the Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, to realign the parties in this action and dismiss the case for lack of subject matter jurisdiction.