**EVANSTON INSURANCE CO.,**
Plaintiff–Appellee,

v.

**HOUSING AUTHORITY OF SOMER-SET; Kentucky Housing Authorities Self–Insurance Fund, Inc.,** Defendants–Appellees,

v.

**Rhonda Kay Griffin, Individually and as Co–Administrator of the Estates of Kaitlyn Griffin and N.A.S. and Administratrix of the Estate of Derel Grif-**

**fin; Jason Steele, Individually and as Co–Administrator of the Estate of N.A.S.; Robin Mullins, Mother and Next Friend of J.T.,** Defendants–Appellants.

No. 16–5018

United States Court of Appeals, Sixth Circuit.

Filed August 03, 2016

Jeffrey C. Mando, Adams, Stepner, Woltermann & Dusing, Covington, KY, for Plaintiff-Appellee.

Charles D. Cole, Sturgill, Turner, Barker & Moloney, Lexington, KY, for Defendant–Appellee Housing Authority of Somerset.

Matthew Porter Cook, Cole & Moore, Bowling Green, KY, for Defendant–Appellee Kentucky Housing Authorities Self–Insurance Fund, Inc.

Nicholas C.A. Vaughn, Law Office, Somerset, KY, for Defendant–Appellant Jason Steele.

Michael F. Eubanks, Shumate, Flaherty, Eubanks & Baechtold, Richmond, KY, for Defendant–Appellant Robin Mullins.

Jane Adams Venters, Adams and Venters, Somerset, KY, Michael F. Eubanks, Shumate, Flaherty, Eubanks & Baechtold, Richmond, KY, for Defendant–Appellant Rhonda Kay Griffin.

BEFORE: WHITE and STRANCH, Circuit Judges; MICHELSON, District Judge.*

* The Honorable Laurie J. Michelson, United States District Judge for the Eastern District of Michigan, sitting by designation.

## OPINION

JANE B. STRANCH, Circuit Judge.

In October 2013, a Kentucky jury awarded $3,736,278 to the estates of Kaitlyn Griffin and her child, Ms. Griffin's parents, her child's father, and her cousin, Joshua Thacker. Evanston Insurance Co. provided excess liability insurance to the defendant in that action, Housing Authority of Somerset (HAS). Following trial, Evanston filed a declaratory judgment action in federal court to determine coverage limits under its policy with HAS. The parties cross-moved for summary judgment and the district court granted summary judgment to Evanston in December 2015. On appeal, the plaintiffs who received the jury award in the state case argue that the district court lacked diversity jurisdiction. Alternatively, they argue that the district court erred in concluding that the only reasonable view was that one "occurrence" took place under Part A of the Evanston policy, and in concluding that there was no coverage under Part B. We now **REVERSE** the district court's order and **REMAND** to evaluate its subject-matter jurisdiction in the first instance.

## I. BACKGROUND

On December 9, 2009, Kaitlyn Griffin and her cousin, Joshua Thacker, both minors, were unloading a vehicle in a common area maintained by HAS when a large maple tree fell on them. Mr. Thacker was severely injured, sustaining multiple injuries to the head, back, neck, legs, and shoulder that required hospitalization, physical therapy, and mental health treatment. Seventeen-year-old Kaitlyn, who was pregnant, died within minutes, at 2:05

p.m., from blunt force trauma to her head and upper body. Doctors later delivered her 26 to 27 week-old baby (posthumously named Nicolas Ayden Steele), who died at 3:05 p.m., shortly after birth, from cardiorespiratory arrest.

Ms. Griffin's estate filed a lawsuit in state court, as did Nicolas's estate. Ms. Griffin's parents asserted claims for loss of parental consortium. Nicolas's father also asserted a claim for loss of parental consortium. Because Mr. Thacker was a minor at the time of his injuries, his mother asserted a claim for damages resulting from his injuries.

After a trial in state court, a jury found that HAS had breached its duty to exercise ordinary care to maintain its common areas. The jury awarded a total judgment of $3,736,278.00 to the victims and their parents.

HAS is part of a risk-management pool called the Kentucky Housing Authorities Self-Insurance Fund (KHASIF), which provides coverage for general liability up to $150,000. Members of KHASIF also have coverage through Evanston Insurance Co. for claims that exceed that amount. KHASIF's insurance coverage through Evanston has two parts. The first part, Coverage Part A, insures KHASIF members for general liability stemming from bodily injury, personal or advertising injury, and property damage. The policy limits under Coverage Part A are $1,000,000 for "each occurrence" and $2,000,000 in the aggregate. The second part, Coverage Part B, insures KHASIF members for "wrongful acts," including "neglect, negligence, or breach of duty." (R. 30–1, PageID, 345, 357.) The policy limits under Coverage Part B are $1,000,000 for "each claim" and $2,000,000 in the aggregate. (R. 30–1, PageID 313, 385.)

After trial, the plaintiffs in the state court case moved to add Evanston as a defendant. HAS opposed the motion "on the grounds that it was contrary to Evanston's potential interest in a federal forum." (R. 38–1, PageID 871.) The state court held the case in abeyance and mandated mediation.

In February 2014, before the mediation had been completed, Evanston filed this declaratory judgment action in federal court to determine the "policy limits." (R. 1, PageID 1–9.) Evanston aligned itself as the only plaintiff in the action; it aligned KHASIF, HAS, and the plaintiffs in the state tort suit—the estates of the victims and the parents of the victims—as defendants. The parties reached a settlement in spring 2014. The settlement agreement provided that Evanston would pay the "policy limits" to the plaintiffs. (R. 40–1, PageID 956; R. 38–1, PageID 872; R. 34, PageID 606.) The agreement left unresolved the amount of the "policy limits" available to satisfy the judgment, acknowledging that a declaratory judgment action had been filed by Evanston, but provided that, at a minimum, Evanston would pay the plaintiffs $980,000, the maximum coverage of $1,000,000.00 less "claim expenses" under the policy. (R. 40–1, PageID 956; R. 34, PageID 606.) In exchange, the plaintiffs agreed to release their claims against KHASIF and HAS. All parties agreed to dismiss their claims and appeals in state court.

On August 21, 2014, the parties stipulated that "[t]he sole remaining issue between the parties, to be resolved by this litigation, is whether policy limits are $1,000,000.00, as contended by Evanston Insurance Company, or whether policy limits are some amount greater than $1,000,000.00, as contended by Defendants." (R. 34, PageID 606.) The parties also stipulated that "[i]f the Court con-

cludes that policy limits are $1,000,000.00, then Evanston Insurance Company shall have no further liability to any of the parties herein under the subject policy." (R. 34, PageID 606.)

In September 2014, the parties in this federal declaratory judgment action filed cross-motions for summary judgment. The district court granted summary judgment for Evanston in December 2015. This appeal followed.

## II. ANALYSIS

For ease of reference here, we will refer to plaintiffs in the underlying state tort suit as the Individual Defendants, and KHASIF and HAS as the Housing Authority Defendants. The Individual Defendants argue that the district court lacked subject-matter jurisdiction over this case; they raised this jurisdictional challenge in their May 3, 2014 answer and counterclaim to Evanston's complaint for declaratory judgment, but did not raise this argument in response to Evanston's motion for summary judgment. Nevertheless, "federal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction to entertain an action exists," *Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 890 (6th Cir. 1998), and "the existence of federal jurisdiction may be questioned at any point in the course of litigation and … parties cannot waive the requirement of subject matter jurisdiction," *Ammex, Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003) (citation omitted). We review the existence of subject-matter jurisdiction *de novo*. *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir. 2010).

Diversity jurisdiction is alleged as the basis for subject-matter jurisdiction in this case. Diversity jurisdiction exists if the matter in controversy "exceeds the sum or value of $75,000" and is between "citizens of different States." 28 U.S.C. § 1332(a)(1). The parties must be completely diverse, meaning that "no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010). "The party invoking federal court jurisdiction"—here, the plaintiff, Evanston—"has the burden of demonstrating by competent proof that the complete-diversity and amount-in-controversy requirements are met." *Cleveland Hous. Renewal Project*, 621 F.3d at 559.

As currently aligned, the parties are completely diverse: Evanston is a citizen of Illinois, and the defendants are all citizens of Kentucky. The Individual Defendants argue, however, that the Housing Authority Defendants should be aligned with Evanston as plaintiffs, which would destroy diversity. "[I]t is the court's responsibility to ensure that the parties are properly aligned according to their interests in the litigation." *Cleveland Hous. Renewal Project*, 621 F.3d at 559 (citing *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992)). "Parties must be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment." *Id.* (internal quotation marks omitted). "If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes." *U.S. Fid. & Guar. Co.*, 955 F.2d at 1089 (citation omitted).

The first step in this analysis is to identify the "primary dispute in the controversy." *Cleveland Hous. Renewal Project*, 621 F.3d at 559. Here, the task is straightforward, as the parties stipulated that "[t]he sole remaining issue between the parties,

to be resolved by this litigation, is whether policy limits are $1,000,000.00, as contended by Evanston Insurance Company, or whether policy limits are some amount greater than $1,000,000.00, as contended by Defendants." (R. 34, PageID 606.) Thus, it must be determined whether the Housing Authority Defendants' "interests in the litigation" are closer to Evanston's interests—that is, to establish that the policy limits are $1,000,000—or to the Individual Defendants' interests—that is, to establish that the policy limits are some amount greater than $1,000,000.

In its complaint, Evanston alleged that "coverage is only available under Coverage Part A," "the falling tree ... constituted a single occurrence," and thus "that there is only $1,000,000.00 available to cover the entire suit." (R. 1, PageID 8 ¶¶ 25–26.) The Housing Authority Defendants responded in their answers[1] by stating that these allegations "state legal conclusions for which no factual response is required," and denying the allegations "to the extent that further response and/or an answer be deemed necessary." (R. 19, PageID 177–78 ¶ 2; R. 22, PageID 293–94 ¶ 2.) The Housing Authority Defendants also admitted that they contend "that coverage under the Policy is available under both Coverage Part A and Coverage Part B, and that [the victims] were injured in separate occurrences, such that the limits of coverage are $4,000,000.00." (R. 1, PageID 8 ¶ 27; R19, PageID 177 ¶ 1; R. 22, PageID 293 ¶ 1.) Though the pleadings suggest some alignment among the named defendants, the pleadings alone are insufficient to decide this question: courts must "look beyond the pleadings and arrange the parties according to their real interests in the suit." *Grant Cty. Deposit Bank v. McCampbell*, 194 F.2d 469, 471 (6th Cir. 1952). We have stated,

[I]t is well established that ... "the courts, not the parties, are responsible for aligning the parties according to their interests in the litigation. If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes."

*U.S. Fid. & Guar. Co.*, 955 F.2d at 1089 (emphasis removed) (quoting *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987)).

The positions taken by the Housing Authority Defendants in this litigation provide some indication that the parties may not be properly aligned. The Individual Defendants attempted to join Evanston in the state court action, and the Housing Authority Defendants "argued against such motion on the grounds that it was contrary to Evanston's potential interest in a federal forum." (R. 38–1, PageID 871.) Their desire to protect Evanston's interests suggests alignment with those interests.

Once in federal court, the Housing Authority Defendants indicated further support of Evanston's interests. During the summary judgment briefing, KHASIF's president submitted an affidavit *on behalf of Evanston* in which he averred that it was "clear to [him], based on the language of the [insurance] policy, that Coverage A and Coverage Part B would never apply simultaneously to the same incident." (R. 47–1, PageID 994.) KHASIF's president also averred that he "never anticipated that Evanston would pay more than $1,000,000.00 under our policy to cover any one incident that gave rise to the liability of the Housing Authority of Somerset." (R. 47–1, PageID 994.)

---

1.  KHASIF and HAS filed separate answers, but they are substantively identical.

There are two other reasons to doubt that the Housing Authority Defendants' interests are aligned with the Individual Defendants' interests. First, the Housing Authority Defendants have declined to file a brief on appeal or join the Individual Defendants' brief. That suggests acceptance of the district court's order, which granted summary judgment for Evanston. Second, the terms of the parties' settlement would seem to align the Housing Authority Defendants' interests with Evanston's. As part of the settlement agreement, the Individual Defendants released the Housing Authority Defendants from any and all claims. Thus, although the Housing Authority Defendants had an incentive to maximize insurance coverage before the settlement—since they would be liable for any portion of the $3.7 million judgment that their insurance policy did not cover—this incentive dissipated once the settlement was reached. If more coverage in this case will result in higher insurance premiums, then the Housing Authority Defendants would have an incentive to minimize coverage.

The district court did not consider whether the parties were properly aligned. We thus remand to the district court to examine its subject-matter jurisdiction in the first instance. Whether the district court had jurisdiction "depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 6 L.Ed. 154 (1824)). Thus, if the parties were properly aligned at the time of filing, then the district court need not dismiss the case—even if the Housing Authority Defendants' interests changed after filing. Given our disposition, we do not address the Individual Defendants' alternative arguments that the district court erroneously concluded that there was only one "occurrence" under Part A of the Evanston policy and that there was no coverage under Part B.

## III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's order granting plaintiff's motion for summary judgment, denying defendants' motion for summary judgment, and granting defendants' motion to strike the affidavit of Kent Latham. We **REMAND** for further proceedings consistent with this opinion.